UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JEFFREY CARTER,<br>Plaintiff, | §<br>§<br>§ |
| v. | §<br>§ Case No. W-16-CA-00282-JCM<br>§ |
| NANCY A. BERRYHILL[1]<br>Defendant. | §<br>§ |

## ORDER

Jeffrey Carter, hereinafter "Plaintiff," seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the undersigned finds that the final decision of the Commissioner be **AFFIRMED**.

## I. BACKGROUND

**A. Procedural History**

On November 20, 2012, Plaintiff filed his application for DIB claiming numerous impairments and a disability onset date of October 25, 2012. Tr. 20, 81. On November 8, 2012, Plaintiff's claim was initially denied and denied again upon reconsideration on August 6, 2013. Tr. 20. On August 12, 2013, Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). Tr. 20. ALJ Malinda W. Kirkpatrick presided over the hearing in Waco, Texas on August 20, 2014. *Id.* On November 19, 2014, the ALJ upheld the Agency's denial of Plaintiff's claim. Tr. 1, 32. On May 20, 2016 the Appeals Council denied

---

[1] Nancy A. Berryhill is now the acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue with this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

review of the ALJ's decision rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. On July 14, 2017, Plaintiff timely brought an action seeking judicial review to the Waco Division of the United States District Court for the Western District of Texas. ECF No. 1-2.

**B. Factual History**

*1. Age, Education, and Work Experience*

Plaintiff was born on June 2, 1956 and was 56 years old at the time of the ALJ's decision. Tr. 30. Plaintiff graduated high school and is able to communicate in English. Tr. 30. Plaintiff's past work experience includes military service and contract work as a field service technician, food service supervisor, cook helper, and supply clerk. Tr. 30-31.

*2. ALJ's Decision*

The ALJ decided two issues: (1) whether Plaintiff met the insured status requirements of S.S.A. §§ 216(i) and 223; and (2) whether Plaintiff was disabled under S.S.A. §§ 216(i) and 223(d). Tr. at 20. *Id.* First, the ALJ found that Plaintiff's disability insured status for purposes of Title II Disability Insurance Benefits eligibility extended to December 31, 2017.[2] Tr. 20. Second, the ALJ found that Plaintiff was not disabled from October 25, 2012 to the date of the ALJ's decision, November 19, 2014. Tr. 20, 32.

In her decision, the ALJ determined Plaintiff's disability status by applying the five-step evaluation process found in 20 CFR 404.1520(a). Tr. 21-32. At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, October 25, 2012. Tr. 22.

At Step 2, the ALJ found that Plaintiff had multiple severe impairments. *Id.* The ALJ found Plaintiff's post-traumatic stress disorder ("PTSD"), major depressive disorder, obstructive

---

[2] Plaintiff must then establish a disability onset on or before his insured status expires to be entitled to DIB. Tr. 20.

sleep apnea, hypertension, gastroesophageal reflux disease, migraine headaches, diabetes mellitus, bilateral sensorineural hearing loss, bilateral hallux valgus post repair, and history of dependency all to be severe impairments. *Id.* The ALJ found at Step 3 that Plaintiff's impairments to that date did not meet or medically equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 23-26.

Prior to Step 4, the ALJ must determine Plaintiff's residual functional capacity ("RFC"). An RFC determination combines medical assessment with descriptions by physicians, the claimant, and others, of any limitations on the claimant's ability to work. *Brown v. Barnhart*, 372 F. Supp. 2d 957, 974 (S.D. Tex. 2005); *see Elzy v. Railroad Retirement Bd.,* 782 F.2d 1223, 1225 (5th Cir. 1986); *see also* 20 C.F.R. § 404.1545. When determining Plaintiff's RFC, the ALJ considered all symptoms to the extent they could be reasonably accepted as consistent with objective medical evidence in accordance with 20 CFR 404.1529, SSRs 96-4p and 96-7p. *Id.* The ALJ also considered medical, and other, opinion evidence in accordance with 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Tr. 26-27. In doing so, the ALJ found that the claimant's medically determinable impairments could cause the claimant's alleged symptoms. Tr. 28.

The ALJ found, however, that Plaintiff's statements regarding the severity, persistence, and limiting effects of the alleged symptoms were not entirely credible because they contradicted the medical evidence as a whole. Tr. 28-30. Thus, the ALJ determined Plaintiff had the residual capacity to:

> perform medium work as defined in 20 CFR 404.1567(c) except stand or walk six out of eight hours, sit for six out of eight hours, no exposure to hazards, moving machinery, or unprotected heights, and he must avoid concentrated exposure to excessive noise levels.

Tr. 26.

Relying on Plaintiff's RFC and the VE's testimony, the ALJ found at Step 4 that Plaintiff was unable to perform past relevant work as a field service technician, food service supervisor, cook helper, and supply clerk. Tr. 30. The vocational expert ("VE")'s testimony is valuable in this regard, as the VE is "familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *accord Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000); *see also Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

When a claimant's RFC is not sufficient to continue his former work, the ALJ considers the claimant's age, education, and work experience in determining whether the claimant is capable of performing other work available in the national economy. *See Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520. At Step 5, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of performing other jobs in the national economy existing in significant numbers. Tr. 30-31. Accordingly, the ALJ found Plaintiff not disabled. Tr. 32. In the present case, Plaintiff asks the Court to reverse the Commissioner's final decision and remand the determination for rehearing. *See* Pl.'s Br. at 20.

## II. STANDARD OF REVIEW

The scope of review is limited to the record, and the Court will neither conduct *de novo* review, make credibility determinations, nor re-weigh the evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). Judicial review of the Commissioner's decision to deny a claimant disability benefits pursuant to 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record exists to support the Commissioner's decision, and whether the ALJ followed relevant legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).

Substantial evidence is described as more than a scintilla, but less than a preponderance. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). It requires evidence that is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 400 (1971); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence creates more than a mere suspicion that the fact to be established exists. *Hames*, 707 F.2d at 164. Finding the decision lacks substantial evidence is only proper when no credible medical findings or evidence support the determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

In determining whether substantial evidence of disability exists, a court will weigh: (1) objective medical facts or clinical findings; (2) diagnoses and opinions of treating and examining physicians; (3) Plaintiff's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the ALJ applied the proper principles of law, and if the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed, even if substantial evidence exists that would support an alternate finding. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992); *Martinez*, 64 F.3d at 173 (citing *Richardson*, 402 U.S. at 390); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To reverse the Commissioner's decision, the court must find that the ALJ committed a reversible error, one affecting the claimant's substantial rights. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("Remanding this case . . . would produce the same result while wasting time and resources."); *see also Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (holding that "procedural improprieties . . . constitute a basis for remand only if such

improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision"). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (error is harmless unless there is reason to think that remand might lead to a different result). "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364 (citing *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. 1981)).

### III. ISSUES PRESENTED

1. Whether, when determining Plaintiff's RFC, the ALJ improperly discounted Dr. Carter-Haith's medical opinion.

2. Whether, when determining Plaintiff's RFC, the ALJ erred in her consideration of Plaintiff's 80% disability rating determined by the Veteran's Administration ("VA").

3. Whether the ALJ improperly considered exhibits 3F through 8F using her own lay opinion (rather than seeking a medical expert's opinion).

4. Whether the ALJ erred in her assessment of Plaintiff's credibility.

### IV. DISCUSSION

All four of Plaintiff's issues on appeal stem from the ALJ's RFC finding. In evaluating a claimant's RFC, the Fifth Circuit has looked to Social Security Administration rulings ("SSR"). *Brown*, 372 F. Supp.2d at 974; *see also Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). SSRs are not binding on this Court, but they may be consulted when the statute at issue provides little guidance. *See id.* In *Myers*, the Fifth Circuit relied on SSRs addressing RFC and exertional capacity. *See id. Myers* provides:

> First, SSR 96–8p provides that a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work . . . . RFC involves both exertional and non-exertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . . The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Id*.

Here, the ALJ found that Plaintiff retains the functional capacity to:

> perform medium work as defined in 20 CFR 404.1567(c) except stand or walk six out of eight hours, sit for six out of eight hours, no exposure to hazards, moving machinery, or unprotected heights, and must avoid concentrated exposure to excessive noise levels. The claimant also has some psychological limitations, but can remember, understand, and carry out detailed, but not complex instructions, perform routine and repetitive tasks, make basic work related decisions, concentrate for intervals of two hours, respond appropriately to changes in routine work setting, and occasionally interact with the public, coworkers, and supervisors.

Tr. 26.

First, Plaintiff contends that the ALJ improperly discounted Dr. Carter-Haith's medical opinion. Pl.'s Br. at 13. Second, Plaintiff argues that the ALJ failed to consider Plaintiff's 80% VA disability rating. *Id.* at 15. Third, Plaintiff asserts that the ALJ improperly reviewed raw medical data using her own lay opinion. *Id.* at 17. Finally, Plaintiff contends the ALJ erred by failing to consider Plaintiff's uninterrupted 40-year work history, including his nearly 20 years of military service. *Id.* at 19. The undersigned will address each issue below.

**A. Issue One: Dr. Carter-Haith's Statement**

Plaintiff argues that the ALJ failed to meet her burden at Step 5 of the sequential evaluation process by failing to incorporate all of Plaintiff's limitations into her RFC determination. *See* Pl.'s Br. at 13. At Step 5, the ALJ has the burden of proof to demonstrate there is other work the plaintiff can perform given *all* of his limitations in large numbers throughout the national economy. 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c). Plaintiff's argument solely rests on the ALJ alleged omission of Dr. Carter-Haith's July 24, 2014 letter to the Social Security Administration. Pl.'s Br. at 14. Plaintiff assumes that this letter amounts to a medical opinion under § 404.1527(a), and thus asserts that the ALJ erred by inadequately considering Dr. Carter-Haith's submission. Pl.'s Br. at 12. The following is Dr. Carter's letter in its entirety:

> This letter is in support of Mr. Carter's Social Security disability hearing. Mr. Carter is enrolled in the Posttraumatic Stress Disorder (PTSD) Program for (Combat related issues) at the Temple VA. Mr. Carter is currently diagnosed and Service Connected for Major Depressive Disorder related to combat experiences.
>
> Mr. Carter has been receiving psychological services (individual psychotherapy) and psychiatric (psychotropic medications) interventions with the T PCT Clinic since 3/27/12. Mr. Carter will continue to receive mental health services from this clinic (T PCT Clinic) on an as needed basis to help meet his current psychological and psychiatric needs. At this time medical records indicate that Mr. Carter is compliant with mental health treatment interventions.
>
> Mr. Carter's current mental health status, to include all related symptoms and capabilities, can be reviewed in his medical records. Mr. Carter's mental health condition (Major Depressive Disorder related to combat experiences) continues to fluctuate due to predominate life stressors and mental health treatment needs are adjusted accordingly.

Tr. 870.

The Code of Federal Regulations defines a medical opinion as:

> statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527. Here, Plaintiff does not specify, nor can the undersigned ascertain, how Dr. Carter-Haith's letter regarding Plaintiff's mental health fluctuation amounts to a medical opinion (and legal determination). Noticeably absent from Dr. Carter-Haith's statement is any judgment about the nature and severity of Plaintiff's resulting impairments. Though Dr. Carter-Haith mentions Plaintiff's diagnosis, he fails to indicate how Plaintiff is impaired by this diagnosis, what he can do despite any impairments, or his physical or mental restrictions caused by his diagnosis. *See* Tr. 870. Nevertheless, without explanation, Plaintiff concludes that Dr. Carter-Haith's July 24, 2014 letter amounts to a medical opinion and is thus entitled to explicit weight in the RFC. The undersigned disagrees with Plaintiff that Dr. Carter-Haith's letter amounts to a medical opinion.

Furthermore, the hearing before the ALJ occurred on August 2, 2014. Tr. 39. At the hearing, the ALJ admitted into evidence Exhibits 1A through 4 A, 1B through 15B, 1D through 10D, 1E through 17E, and 1F through 7F without objection from Plaintiff's attorney. Tr. 40. Despite Dr. Carter-Haith's July 24, 2014 letter being present in the record (Ex. 6F), Plaintiff's attorney conceded that the record failed to contain a medical source statement as evidenced by the following exchange:

> ALJ: . . . Did you obtain a medical source statement of ability to perform any mental or physical work related activities from any of his treating physicians?
>
> ATTY: That's what I'm saying, judge. There aren't any here.

9

> ALJ: Okay, all right. Well, why don't you go ahead and proceed with his testimony, sir?
>
> ATTY: All right.

Tr. 42. Because Dr. Carter-Haith's letter does not amount to a medical opinion as defined by 20 C.F.R. § 404.1527(a) and given Plaintiff's concession thereto, the undersigned finds that Dr. Carter-Haith's letter is not a medical opinion and thus the ALJ had no duty to discuss it nor explicitly weigh it.

Moreover, and again contrary to Plaintiff's assertion, the ALJ did in fact implicitly account for Plaintiff's mental fluctuations when posing her hypothetical to the VE. Specifically, the ALJ inquired: "would [the VE] address for us what's the percentage of time someone can actually be off task, and what's the absenteeism that's permissible in competitive work?" Tr. 77. To which the VE replied:

> I think an individual could be off task . . . anywhere from 1 to 6 minutes, or up to 10 percent of an hour might be acceptable. I think that seven to nine is usually more typically of semi-skilled or skilled. I think that 10 minutes per hour is definitely excessive. In terms of absenteeism I think that one to two days a month might be acceptable. I think if an individual consistently missed three days or more per month, mouth in and month out it would lead to problems maintaining competitive work.

Tr. 77-78. Accordingly, the ALJ sufficiently accounted for impairments caused by Plaintiff's mental fluctuation when making her determination as evidenced by the ALJ's inquiry and the VE's response. It is accepted that the ALJ may rely on VE testimony *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (citing *Vaughan*, 58 F.3d at 132). Thus, because the ALJ considered all of Plaintiff's mental impairments in her RFC determination, considered all of Plaintiff's limitations in her hypotheticals to the VE, and relied on the VE's sworn response, the

undersigned finds that the ALJ met her burden of proof at Step 5 of the sequential evaluation process.

If the ALJ fulfills her Step 5 burden, and alternative employment is available, the claimant must prove that he cannot perform the alternate work suggested in order to prevail. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *see also Boyd,* 239 F.3d at 705; *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *Carey,* 230 F.3d at 135. Thus, even if the ALJ failed to incorporate all limitations into the hypothetical presented to the VE, Plaintiff failed to refute the VE's testimony by cross-examination or presenting contrary evidence. Accordingly, Plaintiff failed to meet his Step 5 burden. Tr. 78; *see Perez v. Colvin*, 415 F.3d 457, 464 (5th Cir. 2005) (holding that where the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the Step 5 of the sequential evaluation); *see also Masterson*, 309 F.3d at 273 ("[the plaintiff] offered no contrary evidence and thus did not satisfy his burden to prove that he could not perform the kinds of jobs identified by [the VE]"). Given the VE's testimony and Plaintiff's failure to refute the VE's testimony, substantial evidence supports the ALJ's RFC and "not disabled" determination. *See Masterson*, 309 F.3d at 273–74.

**B. Issue Two: Consideration of the VA's 80% Disability Rating**

Plaintiff claims that the ALJ failed to properly consider the VA's 80% disability rating in her decision. Pl.'s Br. at 15. Plaintiff receives VA disability benefits at an 80% rating. Tr. 667. In her decision, the ALJ explicitly notes a disability rating of 10% in both of Plaintiff's feet and a 70% disability rating due to Plaintiff's PTSD. Tr. at 23, 28. Plaintiff argues that the ALJ failed to discuss and weigh the VA's rating and subsequently failed to explain her reason for rejecting the evidence of Plaintiff's disability. Pl's Br. at 16. Contrary to Plaintiff's assertion, the ALJ did not reject and properly considered the VA's *partial* disability rating.

The Fifth Circuit has held that while "a VA rating of total and permanent disability is not legally binding on the Commissioner . . . it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (internal citations omitted). A 100% disability determination by the VA is entitled to great weight unless the ALJ adequately explains valid reasons for not doing so. *Id.* "Where the ALJ disagrees with the VA's disability findings, there is no reversible error as long as the record reflects consideration of those findings." *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004) (citing *Kinash v. Callahan*, 129 F.3d 736, 739 (5th Cir. 1997)); *see Vaught v. Astrue*, 271 F. App'x 452, 454-55 (5th Cir. 2008) ("ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so.").

The Fifth Circuit has yet to address what is required of the Court when cases involve findings of *partial* disability by the VA (*i.e.* disability ratings of less than 100%). *See Chambliss*, 269 F.3d at 522; *see also Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) ("the ALJ did not take into account: (1) the VA's determination that Mr. Loza had a service connected 100 percent disability rating"); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) ("[a] VA rating of 100% disability should have been more closely scrutinized by the ALJ"). However, other jurisdictions that have addressed this issue hold that remand is not necessary when the ALJ fails to fully consider partial disability ratings by the VA. *E.g. Peel v. Astrue*, 2009 U.S. Dist. LEXIS 85551, 2009 WL 3028300, *7 (N.D. Fla 2009) ("the ALJ likely did not err by failing to consider the individual percentages, considering that plaintiff was never characterized [by the VA] as totally disabled"); *see also McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011) ("a partial disability rating might cut against rather than in favor of an [Social Security Administration] determination that the individual could not perform remunerative work of any kind").

Plaintiff asserts that the ALJ committed reversible error by failing to consider Plaintiff's 80% disability rating, weigh the rating's effect in her decision, and adequately provide a reason for rejecting the VA's disability rating. Pl.'s Br. at 16. Perhaps if this case involved a Plaintiff with a disability rating of 100%, then, in accordance with precedent, the ALJ would have been obligated to explicitly assign a weight to the VA's disability determination. Here, however, the record reflects that the VA assigned Plaintiff a partial disability rating of 80%, rather than finding him totally and permanently disabled. Tr. at 667. Thus, the case law Plaintiff provides is not fully persuasive to the issue at hand.

As in *Mcleod*, the undersigned finds that a partial disability determination would likely instruct the ALJ to find the Plaintiff "Not Disabled" due to the Social Security Administration's strict criteria – requiring that Plaintiff be unable to perform substantial gainful activity in order to qualify. *See* 42 U.S.C. § 423(d)(1)(A). The very nature of a partial disability determination insinuates that the individual can perform other remunerative work. Thus, the ALJ's failure to explicitly weigh the VA's disability determination would not have altered her decision. Following the holdings of other jurisdictions on this matter, the undersigned finds that the ALJ did not err by failing to weigh Plaintiff's 80% VA disability rating in her decision.

Finally, in deciding Plaintiff is not disabled under 42 U.S.C. § 423(d)(1)(A), the ALJ has not contradicted the VA's 80% disability rating. The VA's determination includes only diagnoses rather than necessary information pertaining to the claimant's symptoms impairing his ability to perform substantial gainful activity, Tr. at 667. Thus, similar to Dr. Carter-Haith's opinion discussed above, the VA's rating gives no information regarding Plaintiff's physical limitations. *Id*. During the ALJ hearing, Plaintiff's attorney concedes this fact:

> ALJ: Did you obtain a – I see the VA rating at 4F. Did you obtain a medical source statement of ability to perform any mental or

13

> physical work related activities from any of his treating physicians?
>
> ATTY: That's what I'm saying, judge. There aren't any here.

Tr. at 42. Though Plaintiff argues that the ALJ failed to explain her implicit rejection of the VA's determination, the undersigned finds that the ALJ did not reject the VA's 80% disability rating. Thus, the undersigned finds that concerning the VA's 80% disability rating, the ALJ did not err and any argument Plaintiff has to the contrary lacks merit.

C. **Issue Three: ALJ Lay Opinion**

Plaintiff also contends that the ALJ erred by relying on her own lay opinion rather than a medical experts opinion in making her RFC determination. Contrary to Plaintiff's allegation, the ALJ did not rely on her own lay opinion in determining Plaintiff's mental RFC. The alleged deficiency in the ALJ's analysis is again predicated on the contention that the ALJ failed to consider Dr. Carter-Haith's medical opinion. Pl's Br. at 17, 18. As explained in issue one, however, the ALJ properly weighed the medical evidence provided by Dr. Carter-Haith.

In arguing this point, Plaintiff asserts, "[t]he only medical opinions the ALJ *did* acknowledge were those of non-examining State Agency medical consultants, Dr. Jim Cox and Dr. Rena Pompa." Pl's Br. at 17. Plaintiff adds, "even assuming . . . that the ALJ had a reasonable basis to question Dr. Carter-Haith's opinion, she had a duty to re-contact Dr. Carter-Haith . . . ." *Id*. Plaintiff's attorney has apparently overlooked the ALJ's deliberate acknowledgement and consideration of Dr. Carter-Haith's opinion and authority when granting "great weight" to his opinion. The ALJ notes:

> Dr. Carter-Haith gave claimant a GAF score of 55, which also indicates that the claimant experiences moderate symptoms. What differentiates Dr. Carter-Haith from doctors McLaughlin and Alam is that he has seen the claimant more than 10 times (Exhibits 2F and 7F). Each time Dr. Carter-Haith treated the claimant, he gave

14

> him a 55 GAF score. The consistency of the score is important because Dr. Carter-Haith has seen the claimant the most and for the longest period, indicating he can assess the claimant on more than one or two individual sessions. Furthermore, the GAF score is consistent with the evidence of record, as discussed in the preceding paragraphs. The established residual functional capacity reflects the claimant's moderate psychiatric symptoms and because of that, the undersigned *gives great weight to the opinion*.

Tr. at 29 (emphasis added).

As explained, the ALJ gave great weight and proper consideration to Dr. Carter-Haith's opinion, Exhibit F, which undermines Plaintiff's assertion that the ALJ failed to consider Dr. Carter-Haith's medical analysis set forth in Exhibits 3F through 8F. Furthermore, the ALJ considered the qualified medical analysis of Doctors Droemer, Moss, Carter-Haith, Perachio, McLaughlin, Alam, Cox, Pompa, and kinesiotherapist Ms. Peterson. Tr. at 23-29. Accordingly, the undersigned finds that the ALJ did not base her RFC determination on lay analysis of raw medical data, but rather based her determination on medical expert opinions.

**D. Issue Four: Plaintiff's Credibility**

Finally, Plaintiff argues that the ALJ did not properly consider his military service and work history in her credibility assessment. *See* Pl's Br. at 19. Specifically, Plaintiff claims the ALJ "did not properly acknowledge or discuss" Plaintiff's "40 uninterrupted years of earnings prior to his alleged disability onset" including "nearly twenty years of service in the Army . . . ." *Id*. Plaintiff argues his "lengthy and consistent work history which included wartime service is a factor that lends to his credibility, but the ALJ failed to even acknowledge [that] fact". *Id* at 20.

The ALJ's credibility assessment determines the degree to which a Plaintiff's subjective complaints about his condition are accepted when considering Plaintiff's disability. *See* SSR 96–7p, 1996 WL 374186, at *4 (Jul. 2, 1996). When determining Plaintiff's credibility, the adjudicator must consider the entire record, including Plaintiff's prior work record and efforts to

15

work. *Id*. After evaluating all the available evidence, the ALJ must then draw appropriate conclusions about the Plaintiff's credibility. *Id.* at 5.

While it is true that SSR 96-7p mandates that the ALJ consider all the evidence when evaluating Plaintiff's credibility, nothing in the ruling indicates that the ALJ must individually address each piece of evidence and discuss the weight attributed to it. *See* SSR 96–7p, 1996 WL 374186, at *4 (Jul. 2, 1996). Here, the ALJ acknowledged in her opinion that Plaintiff retired from the Army back in May of 1995 and [then] started doing contract work. [Plaintiff] testified that he worked for many years as a range helper and was laid off . . . in 2013, which was the last time he worked fulltime." Tr. 22-23. The ALJ additionally discussed Plaintiff's work history in her credibility assessment noting that Plaintiff testified he could only lift 10 pounds though "his most recent work required him regularly to lift 50 pounds or more . . ." yet, "[t]he objective evidence does not support . . . that the claimant's strength has severely diminished . . . ." Tr. 28. Finally, in the hearing before the ALJ, Plaintiff answered questions at length regarding his work history. Tr. 42-52.

Although the ALJ did not engage in a detailed analysis of how heavily Plaintiff's work history and military record factored into her credibility determination, the ALJ was under no obligation to do so. *See* SSR 96–7p. The undersigned finds that, by acknowledging Plaintiff's military and work history in her credibility discussion, the ALJ sufficiently fulfilled her statutory duty to evaluate all of the evidence in the record when assessing Plaintiff's credibility. Thus, the ALJ did not err in her analysis of Plaintiff's credibility.

## V. CONCLUSION

For the reasons given above, the undersigned concludes that reversal and remand is not required and that the final decision of the Commissioner be **AFFIRMED**.

**SIGNED** July 5, 2017

```
                              _____
                              JEFFREY C. MANSKE
                              UNITED STATES MAGISTRATE JUDGE
```